STEPHANIE S. CHRISTENSEN
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
JONATHAN GALATZAN
Assistant United States Attorney
Chief, Asset Forfeiture Section
DAN G. BOYLE (Cal. Bar No. 332518)
Assistant United States Attorney
Asset Forfeiture Section
     1400 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-2426
     Facsimile: (213) 894-0141
     E-mail:    Daniel.Boyle2@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>CELEBRITY FINANCIAL LLC,<br>　dba "Sherman Oaks Check<br>　Cashing I, LP,"<br><br>　　　　Defendant. | No. CR 22-081-DMG<br><br>JOINT SENTENCING POSITION FOR<br>DEFENDANT CELEBRITY FINANCIAL LLC<br><br>Sentencing Date: August 29, 2022<br>Sentencing Time: 11:00 a.m.<br>Location:　　Courtroom of the<br>　　　　　　　Hon. Dolly M. Gee |

Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorney Dan G. Boyle, and defendant CELEBRITY FINANCIAL LLC, by and through its counsel of record Mark Geragos and Setara Qassim, hereby file this joint sentencing position.

This joint sentencing position is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: August _15,_2022

Respectfully submitted,

STEPHANIE S. CHRISTENSEN
Acting United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
JONATHAN GALATZAN
Assistant United States Attorney
Chief, Asset Forfeiture Section

　　/s/
DAN G. BOYLE
JEFF MITCHELL
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

Dated: August _15,_2022

　　/s/ (email authorization 8-11-22)
MARK GERAGOS
SETARA QASSIM
Attorneys for Defendant
CELEBRITY FINANCIAL LLC

**JOINT MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

On April 5, 2022, defendant Celebrity Financial LLP ("defendant") pled guilty pursuant to a plea agreement to an information charging defendant with Failure to Maintain an Effective Anti-Money Laundering Program, in violation of 31 U.S.C. §§ 5318(h)(1), 5322(b).

While the defendant waived a Presentence Investigation Report, the parties' plea agreement calculated a guidelines level of 12 before acceptance of responsibility and a criminal history category of I under the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines"). Based on the terms of the plea agreement and as detailed further herein, the parties jointly recommend that defendant be sentenced to the following:

- A fine of $500,000;
- A term of probation of 2 years contingent upon prompt payment of any fine; and
- A statutorily mandatory special assessment of $400.

**II.   STATEMENT OF FACTS**

At the time of entry of its guilty plea, defendant admitted to the following facts pursuant to the plea agreement:

Throughout the relevant time period, defendant was a domestic financial institution, as defined in 31 U.S.C. § 5312(a)(2). Defendant was aware that the Bank Secrecy Act ("BSA") required defendant to develop, implement, and maintain an effective anti-money laundering program reasonably designed to prevent its services from being used to facilitate money laundering, by, among other elements, having effective written policies and procedures for verifying

customer identification, determining whether Currency Transaction Reports ("CTRs") and Suspicious Activity Reports ("SARs") needed to be filed, and having internal controls and independent testing to assure compliance.

Although defendant had written policies and procedures as required by the BSA, defendant failed to implement and maintain key portions of the program.  Defendant acted willfully in failing to implement and maintain an effective anti-money laundering program, and acted with knowledge that such failures were unlawful.  For example, defendant encouraged customers to bring large business checks, far in excess of $10,000, to defendant, and defendant and its agents told its customers that it would not file CTRs.  As a result, as defendant then knew and suspected, many of its customers brought checks that were proceeds of unlawful activity, including but not limited to customers K.A. and E.K., who presented and cashed at least $18,350,628.00 in checks with defendant, which defendant knew or suspected were proceeds from the operation of an unlawful sports gambling enterprise.

Defendant, through its managers and agents, was also aware that the BSA required financial institutions such as itself to file CTRs with the Department of Treasury, including for any transaction involving more than $10,000 in currency on a single day. Pursuant to 31 CFR 1010.312, the BSA required defendant to identify and record the name and address of the individual presenting a transaction, as well as record the social security or taxpayer identification number of any person or entity on whose behalf such transaction is to be effected.  Defendant, however, repeatedly failed to do so.

"Runners" of the above-described unlawful sports gambling business would bring in checks, but they were not the payees whose names were on the checks. The checks were endorsed before they were brought in, and defendant's managers and agents did not know if the payees were actually signing the checks. Defendant's managers and agents believed the checks were from the operation of unlawful sports gambling based on conversations with K.A.

Defendant was also aware that the BSA required financial institutions such as itself to file a SAR with the Department of Treasury for a transaction conducted or attempted involving at least $5,000 in funds or other assets, where the financial institution knew, suspected, or has reason to suspect that the transaction (or a pattern of transactions of which the transaction was a part): (1) involves funds derived from illegal activity or was intended or conducted in order to hide or disguise funds or assets derived from illegal activity as a part of a plan to violate or evade any federal law or regulation or to avoid any transaction reporting requirement under federal law or regulation; (2) was designed, whether through structuring or other means, to evade any requirements of this part or of any other regulations promulgated under the BSA; (3) had no business or apparent lawful purpose or was not the sort in which the particular customer would normally be expected to engage, and the financial institution knew of no reasonable explanation for the transaction after examining the available facts; or (4) involved the use of the financial institution to facilitate criminal activity.

Defendant, however, knowingly and willfully failed to file SARs for financial transactions that it knew it was required to report. For example, on or about September 9, 2020, E.K. presented two checks

to defendant that were less than $10,000 each, but greater than $10,000 in the aggregate. E.K. asked an employee of defendant if defendant would report the transaction, and the employee told E.K. that defendant would not report the transaction. E.K. then tipped the employee $100.00, which the employee accepted without comment. As defendant then knew and understood, E.K. requested that defendant not file a CTR and intended to evade the reporting requirements. Defendant, however, did not file a SAR even though it knew it was required to file the report pursuant to 31 CFR § 1022.320(a)(2).

The pecuniary gain to defendant based on the above-described conduct was no less than $500,000.

**III. SENTENCING CALCULATIONS**

At the change of plea, defendant waived preparation of a presentence report. See ECF No. 20. The calculations below are thus drawn from the plea agreement (see ECF No. 9, ¶ 8):

Defendant's grouped and adjusted offense level on all Counts as 18, based on the following calculation:

| | | |
|---|---|---|
| Base Offense Level: | 8 | USSG § 2S1.3(a)(1) |
| Specific Offense Characteristics: | | |
| Proceeds of Unlawful Activity | +2 | USSG § 2S1.3(b)(1) |
| Violations of BSA > $100K in 12 months: | +2 | USSG § 2S1.3(b)(2) |

ECF No. 9, ¶ 8. After a two-point downward adjustment for acceptance of responsibility under § 3E1.1(a), defendant's total offense level is 10. Defendant has no criminal history.

Pursuant to 31 U.S.C. § 5322, "[a] person willfully violating [subchapter II of Title 31] ... while violating another law of the

4

United States or as part of a pattern of any illegal activity involving more than $100,000 in a 12-month period, shall be fined not more than $500,000, imprisoned for not more than 10 years, or both."

Pursuant to USSG § 8C2.4(a), which governs sentencing of non-criminal purposes organizations with respect to fines, the base fine is the greatest of the following:

> (1) the amount from the table in [USSG § 8C2.4(d)] corresponding to the offense level determined under §8C2.3 (Offense Level); or
>
> (2) the pecuniary gain to the organization from the offense; or
>
> (3) the pecuniary loss from the offense caused by the organization, to the extent the loss was caused intentionally, knowingly, or recklessly.

**IV. THE PARTIES' RECOMMENDED SENTENCE RANGE IS REASONABLE AND APPROPRIATE UNDER THE SECTION 3553(a) FACTORS**

The parties request that the Court adopt the above factual findings and guidelines calculations. The parties request that the Court impose the following sentence, which the parties submit is reasonable an appropriate here:

- A fine of $500,000;
- A mandatory special assessment of $400; and
- A term of probation of 24 months, conditional upon prompt payment of the above-described fine and assessment.

While not definitive, the Guidelines range provides the starting point for finding a reasonable sentence and must then be considered with the factors set forth in 18 U.S.C. § 3553(a). See United States v. Cantrell, 433 F.3d 1269, 1279 (9th Cir. 2006). "To comply with the requirements of Booker, the district court must have sufficiently

5

considered the Guidelines as well as the other factors listed in § 3553(a). This requirement does not necessitate a specific articulation of each factor separately, but rather a showing that the district court considered the statutorily-designated factors in imposing a sentence." United States v. Nichols, 464 F.3d 1117, 1125 (9th Cir. 2006) (quoting United States v. Knows His Gun, 438 F.3d 913, 918 (9th Cir. 2006)).

Pursuant to USSG § 8C2.4(a), the appropriate base fine to an organization may be calculated from the greatest of three possible calculations, including "the pecuniary gain to the organization from the offense." Here, defendant has admitted that the pecuniary gain to defendant based on the offense conduct was no less than $500,000. At the same time, $500,000 is the statutory maximum fine under 31 U.S.C. § 5322(b). Accordingly, defendant's admitted pecuniary gain provides the appropriate base fine amount (at least $500,000), which is also the statutory maximum fine amount ($500,000), thus providing the appropriate guidelines fine. Furthermore, because the base fine amount already reaches the statutory maximum,[1] the statutory maximum becomes the guidelines fine, and the Court need not consider any culpability score multiples pursuant to USSG § 8C2.5.[2]

The parties agree a guidelines fine of $500,000 is appropriate considering the factors identified in USSG § 8C2.8. Namely, a guidelines (and statutory-maximum) fine reflects the seriousness of

---

[1] Pursuant to USSG § 8C3.1(b), where the guidelines would result in a fine range which exceeds the statutory maximum, then "the maximum fine authorized by statute shall be the guideline fine."

[2] Neither would such a culpability calculation significantly lower defendant's potential fine, as neither of the mitigating factors found in USSG § 8C2.5(f-g), which give credit for effective compliance programs and prompt self-reporting, would apply based on the admitted facts.

6

the offense and would achieve a deterrent effect both specifically on defendant as well as on the community generally. See USSG § 8C2.8(a)(1). Such a fine amount reflects the defendant's lack of an effective compliance program, see USSG § 8C2.8(a)(11), and the harm to the financial system caused by conduct which facilitates the laundering of the proceeds of crime by other bad actors – in this case at least $18,350,628.00 in gross funds traceable to illegal sports betting. See USSG § 8C2.8(a)(2-4). In addition, a statutory-maximum fine reflects defendant's significant income, earning capacity, and financial resources, and the need to deprive defendant of its profit from the above-described transactions. See USSG § 8C2.8(a)(10)(citing 18 U.S.C. 3572(a)(1,5).[3]

The parties also recommend a sentence of probation for a period of 24 months pursuant to USSG § 8D1.1 in order to ensure payment of any court-ordered fines and assessments. However, if all court-ordered fines and assessment are paid within 60 days, probation shall be terminated. To the extent that probation is not waived by prompt payment of all court-ordered fines and assessments, the parties agree to the following conditions, pursuant to USSG § 8D1.3-4, to run for the entire term of probation:

    1. Defendant shall not commit another federal, state, or local crime during the term of probation;

---

[3] Because the parties agree to recommend a statutory-maximum fine, the Court need not consider disgorgement pursuant to USSG § 8B1.9. If, however, the Court were inclined to order a fine of less than the statutory-maximum, the Court would also be obligated to consider USSG § 8B1.9's direction that "[t]he court shall add to the fine determined under § 8C2.8 (Determining the Fine Within the Range) any gain to the organization from the offense that has not and will not be paid as restitution or by way of other remedial measures."

7

       2. Defendant shall, at its expense, publicize the nature of the offense committed, the fact of conviction, the nature of the punishment imposed, and the steps that will be taken to prevent the recurrence of similar offenses;

       3. Defendant shall develop and submit to the court an effective compliance and ethics program consistent with USSG §8B2.1 (Effective Compliance and Ethics Program), and shall include in its submission a schedule for implementation of the compliance and ethics program;

       4. Upon approval of the above-described compliance program, shall notify its employees and shareholders of its criminal behavior and its compliance program; and

       5. Defendant shall submit to: (A) a reasonable number of regular or unannounced examinations of its books and records at appropriate business premises by the probation officer or experts engaged by the court; and (B) interrogation of knowledgeable individuals within the organization.  Compensation to and costs of any experts engaged by the court shall be paid by defendant.

The parties do not believe any restitution or forfeiture is required pursuant to USSG § 8B1.1 or USSG § 8E1.2.

//

//

## V.   CONCLUSION

For the foregoing reasons, the parties request that the Court adopt the guidelines calculations from the Plea Agreement, and sentence defendant to:

- A fine of $500,000;
- A mandatory special assessment of $400; and
- A term of probation of 24 months, conditional upon payment within 60 days of any and all court-ordered fines and assessments.